## ROBERT A. KINZIE

*v.*

## FREDERICK H. WINSTON.

BANKRUPTCY — *what rights of the bankrupt passed to his assignee under the act of* 1841. Where the fee in a public street in a city is in an individual, subject only to the public easement, the right of the owner therein, upon his being declared a bankrupt, would pass to his assignee, under the provisions of the bankrupt law of 1841, and become fully vested in the purchaser from the assignee.

APPEAL from the Circuit Court of Cook county; the Hon ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Mr. R. C. HURD and Messrs. SCRIBNER & HURD, for the appellant.

The mere naked fee in a public street, owned by an individual, subject to a perpetual right of user in the public, counsel contended, was not "property," or a "right of property," in the sense in which those terms are used in the bankrupt act of 1841, comparing with that act the various English statutes, and citing the following cases as showing what did not pass to the assignee in bankruptcy in England: *Benson* v. *Flowers*, Sir T. Jones, 215; 1 Com. Dig. 520 (D. 19); *Bennet* v. *Davis*, 2 P. Wms. 316; *Winch* v. *Keeley*, 1 Term R. 619; *Carpenter*

v. *Marnell*, 3 Bos. & Pul. 40 ; *Moth* v. *Frome*, Ambler, 394 ; *Carleton* v. *Leighton*, 3 Meriv. 667 ; Chan. Ca. 71 ; 2 Vern. 97, S. C., cited ; *Twopenny* v. *Payton*, 10 Sim. 487 ; *Godden* v. *Crowhurst*, id. 642 ; *Townshend* v. *Windham*, 2 Ves. Sr. 3 ; *Gayner* v. *Wilkinson*, Dick. 491 ; *Ex parte Kensington*, 2 Ves. & B. 79 ; *Jacobson* v. *Williams*, 1 P. Wms. 382. The following American cases were cited : *Shoemaker* v. *Keeley*, 1 Yeates, 245 ; S. C., 2 Dall. 213 ; *Sommer* v. *Wilt*, 4 S. & R. 19, 28 ; *North* v. *Turner*, 9 id. 248 ; *Sullivan* v. *Bridge*, 1 Mass. 511 ; *Streeter* v. *Sumner*, 11 Fost. 542 ; *Bird* v. *Clark*, 3 Day, 272 ; *Kip* v. *Bank of N. Y.*, 10 Johns. 65 ; *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596 ; *In re J. D. Crockett*, (N. Y. S. D.) 2 B. R. 75 ; 3 Am. Law Rev. 496 ; *Nichols* v. *Bellows*, 22 Vt. 581 ; *Oakey* v. *Bennett*, 11 How. (U. S.) 33 ; *Barnett* v. *Pool*, 23 Tex. 517 ; *White* v. *Creer*, 16 Ga. 416 ; *Shay* v. *Lessaman*, 10 Barr, 432 ; *Ex parte Snow*, 1 N. Y. Leg. Obs. 264 ; S. C., 4 Law Rep. 369 ; *Ex parte Tebbets*, 5 Law Rep. 503 ; *Ex parte Beardsley*, Bank Reg. 121 ; *Ex parte Ely*, 1 N. Y. Leg. Obs. 131 ; 2 Wash. C. C. 406 ; *Vasse* v. *Comegys et al.*, 4 id. 570. But in the last case the supreme court of the United States took a different view, by a divided court. *Comegys* v. *Vasse*, 1 Pet. 193.

Messrs. SCAMMON, McCAGG & FULLER, for the appellee.

We insist that the interest or right, which the owner of the fee in a public street holds, subject to the public easement, passes to his assignee in bankruptcy, under the bankrupt act of 1841.

In *French* v. *Carr*, 2 Gilm. 664, this court held the language of that act was sufficiently comprehensive to embrace the most minute and temporary interest in property. See, also, *Holbrook* v. *Coney*, 25 Ill. 543.

"The general rule is, that the assignment passes the whole of the bankrupt's property, or all that might be conveyed ; in other words, the assignee stands precisely in the situation of

the bankrupt himself. Hilliard on Bankruptcy and Insolvency, 107. The Federal courts, which have peculiar power and jurisdiction to construe the acts of Congress, have often decided that the bankrupt act of 1841 means what it says. *Ex parte Newhall*, 2 Story, 360 ; *Ex parte Fuller*, id. 327 ; *Carr* v. *Hilton*, 1 Curtis, 231 ; *Carr* v. *Gale*, 3 Woodbury & M. 38 ; *In re Grant*, 2 Story, 312."

" Under the bankrupt law, the entire property and interests of the bankrupt were vested in the assignee." *Cook et al.* v. *Lansing*, 3 McLean, 571.

" While the act does not extend to rights of a mere personal nature, as claims for damages, arising out of a breach of promise to marry, or out of personal torts and injuries, it comprehends *every right and interest, and every right of action founded in, or growing out of property.*" *Moore* v. *Jones et al.*, 23 Vt. 744, in district court of the United States.

All these cases arose and were decided, under the act of 1841, and, if there had been any doubt of their correctness, they would have been carried to the supreme court of the United States for further consideration. They show with how much ingenuity that section was sought to be evaded, and how uniformly the courts of the United States decided that " all " means the whole of the bankrupt's estate, and every right of action growing out of property, which belonged to him.

It was decided under the Bankrupt law of April 4, 1800, that possibilities coupled with an interest, passed to the assignee. *Comegys et al.* v. *Vasse*, 1 Pet. 193-220.

In delivering the opinion of the court in that case, Judge STORY said, quoting the words of the law : " 'All the estate, real and personal, of every nature and description, in law and equity,' are broad enough to cover every description of vested right and interest attached to, and growing out of, property. Under such words, the whole property of a testator would pass to his devisee. Whatever the administrator would take, in case of intestacy, would seem capable of passing, by such words." P. 218.

The words of the act of August 19, 1841, are more comprehensive than those of the former act, as will be seen by comparison of the two laws.

Mr. GEORGE C. CAMPBELL, also for the appellee, argued that the words of the bankrupt act of 1841, "all property and rights of property of every kind, name and nature," were comprehensive enough to pass to the assignee the title of the owner of the fee in a public street, which was vested in the bankrupt.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment, brought to the September term, 1869, of the Cook circuit court, by Robert A. Kinzie against Frederick H. Winston, to recover the possession of lots one, two, three, sixteen, seventeen and eighteen in Kinzie's addition to Chicago. The cause was tried by the court without the intervention of a jury, resulting in a judgment for the defendant.

To reverse this judgment the plaintiff appeals, assigning the usual errors.

The ground of the plaintiff's claim to recover, as is shown by the record, was this: Kinzie, being the owner, by purchase from the United States, of the north fraction of section 10 in township 39 north, range 14 east of the third principal meridian, in February, 1833, made a subdivision of it, which he called "Kinzie's addition to Chicago." The plat was acknowledged and filed for record on the 22d of February, 1833, and recorded 18th February, 1834. As the act providing for recording town plats, by force of which the fee in the streets therein designated was vested in the public, did not become a law until the 27th day of February, 1833, it is not denied the fee in these streets remained in Kinzie, subject only to the public easement.

The land so subdivided lies immediately north of the original town of Chicago, and is bounded on the east by Lake Michigan; the street running north and south, nearest the lake, was called "Sand street," and the one running east and

west, nearest the north line of the fraction, was called "Superior street." The waters of the lake limited Sand street on the north by an oblique line extending from a point on its eastern side about one hundred feet below, to a point on its western side about one hundred feet above, "Superior street." The north-western block of this subdivision was numbered fifty-four (54), and was bounded on its eastern side by "Sand street" in part, and in part by the lake. Sand street, therefore, north of Superior street, formed a small triangular piece of land between the lake and block fifty-four, which was less than thirty-three feet wide at its lower or southern end, and diminished to a point at its northern extremity. Upon this triangle new land was subsequently formed by accretion, which, at the date of the commencement of this action, extended eastwardly four hundred and fifty feet, more or less. The premises in controversy form a portion of this new land.

The plaintiff claimed that this formation commenced after the decree in bankruptcy against him, rendered March 18, 1842, and as late as 1844 or 1845, and that the bare, naked, legal title which he held to that part of Sand street, east of block fifty-four, burdened with an easement in the public, which might be perpetual, and which is the triangular piece above described, did not pass to his assignee under the decree in bankruptcy, and therefore he was not divested of his title to the accretion which had subsequently formed, by the sale and conveyance of the assignee.

The defendant claimed, that the legal title to Sand street was in the bankrupt at the time of the decree, and was "property," within the meaning of the bankrupt act of 1841, and passed to the assignee under the decree, and the circuit court so held.

To this question alone have we directed our attention, and we here take occasion to express our gratification for the able and lucid manner in which counsel have presented it to us, thereby aiding us and enlightening us in our investigation.

Counsel for appellant, in their very able argument, have insti-

tuted a comparison of the English statutes of bankruptcy and the decisions made thereunder, with the provisions of the several acts of congress on the same subject.

He quotes a part of the second section of 13 Eliz., chapter 7, but not as it is found in the English Statutes at Large, vol. 4, 298; that portion of it he has assumed to quote is as follows: " As also with all his or her lands, tenements, hereditaments, as well copy or customary hold as freehold, which he or she shall have in his or her own right before he or she became bankrupt; and also with all such lands, tenements and hereditaments, as such person shall have purchased, or obtained for money or other recompense, jointly with his wife, children or child, to the only use of such offender or offenders; or of or for such use, interest, right or title as such offender or offenders then shall have in the same, which he or she may lawfully depart *withal*."

He also quotes a part of section 8, which is in the original a part of section 11. Id. 302. Section 8 has reference alone to the bestowal of forfeitures after the bankrupt's debts are paid. Section 11 provides, " that any lands, tenements, hereditaments, free or copy, offices, fees, goods or chattels, shall descend, revert, or by any means come to any such person, being bankrupt as is aforesaid, before such time as their debts, due to their creditors shall be fully satisfied and paid, or otherwise agreed for, that then the said lands, etc., shall be sold, extended and delivered by the commissioners, for the payment of the creditors in like manner and form as other lands, etc., which they had when they were declared first to be bankrupt.

Quotations are also made from the statute 21 James I, chapter 19. That statute is entitled " An act for the further exemption of a bankrupt, and relief of creditors against such as shall become bankrupt, and for inflicting of corporal punishment upon the bankrupt in some special cases."

The twelfth section authorizes the commissioners in bankruptcy to sell estates in tail, in possession, reversion or remainder to any person or persons for the relief and benefit of the

creditors of all such bankrupts, and which sale and conveyance shall be available to such persons, their heirs, etc., against the bankrupt and against all and every the issues of the body of such bankrupt, and against all persons claiming any estate under the bankrupt, after such time as he shall become bankrupt, and against all persons whom the bankrupt, by common recovery, or other ways or means, might cut off or debar, from any remainder, etc. Id. 761.

The next statute quoted from, is the statute 5 George II, chapter 30. That act is entitled "An act to prevent the committing of frauds by bankrupts," and consists of forty-nine sections. This act was limited to three years, continued in force by the act 24 George II, chapter 57, and by many other acts, and made perpetual by the act of 37 George III, chapter 124. It does not purport to be an act enlarging and consolidating the system of bankruptcy, nor are its provisions correctly quoted in the note to *Higden* v. *Williamson,* cited by counsel. The statute is section 1, in relation to the examination of bankrupts; that upon such examination, he shall fully and truly disclose and discover all his, her or their effects, and real estate, and personal, and how, to whom, when, and what consideration, he has disposed of, assigned or transferred any of his goods, etc., or other estate and effects of which he was possessed, or in which he was interested or entitled, or which any person had in trust for him, or for his use, at any time before or after the issuing of the commission, or whereby such person or persons, or his, her or their family or families, hath or have, or may have or expect any profit, possibility of profit, benefit or advantage whatsoever, etc. Id. vol. 9, 281.

The next quotation is from the statute 12 and 13 Victoria, chapter 106, which is not at hand. This statute, it is said, repealed the preceding bankrupt acts, and section 141 thereof has this provision: "Whenever any person shall have been adjudged a bankrupt, all his personal estate and effects, present and future, whenever the same may be found or known, and all property which he may purchase, or which may revert,

descend, be demised or bequeathed, or come to him before he
shall have obtained his certificate, and all debts, etc., shall
become absolutely vested in the assignee for the time being,
etc.

Two decisions are cited by appellant's counsel, one by Lord
COWPER, in *Jacobson et al.* v. *Williams,* 1 P. Wms. 382, in
which it was held, as counsel insist, that a bare possibility
did not pass to the assignee of a bankrupt. But the best
foundation for the decision in that case is, as stated in the note,
because the bankrupt husband could not have come at his
wife's portion without the assistance of a court of equity, which
would not have decreed it to him but on his making some
provision for his wife; since, as the annotator says, a possibility
or contingent interest is certainly assignable, referring to the
case of *Higden* v. *Williamson,* first heard at the rolls, and after-
ward affirmed by Lord Ch. KING and reported in 3 P. Wms. 132,
and cited by appellant's counsel. The case, in effect, was, an
estate was devised to be sold and the moneys arising from such
sale to be divided among such of the children of A as should
be living at A.'s death; A had several children, one of whom,
B, becoming bankrupt, gets his certificate allowed, after which
A dies; this contingent interest was held liable to the bank-
ruptcy, for the reason that the son, in his mother's life-time,
might have released it, and the opinion was grounded on the
words of the statute, Eliz. chapter 7, section 2, that the commis-
sioners should be empowered to assign over all that the bank-
rupt might "depart withal."

The chancellor, in this case, evidently puts the decision in
*Jacobson* v. *Williams,* on the ground that, as the bankrupt
husband could not come at his wife's portion, except by the
aid of equity, without making some provision for her, it was
not reasonable the assignees, standing in his place, and deriving
their claim from him, should be more favored.

Counsel also cite 1 Preston on Estates, 76. That writer says,
at page 75: "A contingent interest does not give any *certain*
nor any *immediate* right, or any estate in the land; it gives a

mere possibility,— a possibility which is coupled with an interest, when the person is fixed and ascertained; and such possibility, coupled with an interest, is devisable by will; may be released; may pass by the bargain and sale of commissioners of bankrupt; may be barred or extinguished by estoppel; but it cannot be granted or transferred by the ordinary rules of the common law, though it may be bound in equity, by contract." Then follows the quotation made by appellant's counsel, on page 76, in which an apprehension is entertained that mere possibilities to persons not ascertained, as to the survivor of several persons, etc., are not coupled with an interest, are not transferable to assignees under a commission of bankruptcy. Yet the case from P. Wms. decides they are.

The later English case cited, *In re Vizard's Trusts*, is not within our reach, and we cannot determine to what extent it reaches.

Counsel next quote the act of congress of 1800, the eleventh section of which is not unlike section 12 of the statute of James I, and section 18 like that of section 1, 5 Geo. II. No decisions under this act are referred to, except *Krumbaar* v. *Burt et al.*, 2 Wash. C. C. 406, in which it was said that the decisions of the English courts, that a possibility, whether belonging to the husband or wife, would pass to the assignees of the bankrupt husband, would not have been made, were it not for the strong language of their statute of bankruptcy, and no language so strong was found in our bankrupt act of 1800. Mr. Justice WASHINGTON delivered an able opinion in the case, and it went no further. In the subsequent case, however, of *Vasse* v. *Comegys* and *Pettit*, 4 id. 570, the same question, in a different shape, was before the court, and decided in harmony with *Krumbaar* v. *Burt, supra.* The record in that cause was taken by writ of error to the supreme court of the United States, and the judgment of the circuit court was reversed (*Comegys* and *Pettit* v. *Vasse*, 1 Pet. 193), that court holding that mere personal torts, which die with the party and do not survive to his personal representatives, are incapable of passing

by assignment, yet that vested rights *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of, and adhering to, property, may pass by assignment in bankruptcy.

This decision was made in 1828, and under the eighteenth section of the act of 1800, which being omitted in the act of 1841, under which this plaintiff became a bankrupt, counsel infer was so omitted for the express purpose, so to shape the new statute as to conform to the views of Justice WASHINGTON on the point upon which the supreme court was divided. We omitted to remark in its proper place, that the decision on the point of assignability of the claim in question, was by a majority of the court, but how small or large the majority, or who were the dissenting judges, the report of the case gives us no information. We take it as the decision of the court, to which full effect must and should be given. We doubt very much if the majority of the congress which passed the act of 1841, ever read the decision of Justice WASHINGTON. All this is mere speculation.

But now to the act of congress of 1841. What are its provisions? That act was approved August 19, 1841, and it is declared by the third section, that all the property and rights of property, of every name and nature, and whether real, personal or mixed, of every bankrupt, except as hereinafter provided, who shall, by a decree of the proper court, be declared to be a bankrupt within this act, shall, by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or other conveyance whatsoever; and the same shall be vested, by force of the same decree, in such assignee as from time to time shall be appointed by the proper court for this purpose, which power of appointment and removal, such court may exercise at its discretion, *toties quoties ;* and the assignee so appointed shall be vested with all the rights, titles, powers and authorities to sell, manage and dispose of the same, and to sue for and defend the same, subject to the order and direction of such court, as fully, to all intents and purposes, as if

5 — 56TH ILL.

the same were vested in, or might be exercised by, such bankrupt, before or at the time of his bankruptcy declared as aforesaid.

"All the property and rights of property, of every name and nature, and whether real, personal or mixed," are certainly very general and comprehensive words, and broad enough to cover every description of vested right or interest attached to and growing out of property. Under such words it cannot be doubted, the whole property of a testator would pass. These terms are broader and more comprehensive than any found in the English statutes or in the act of congress of 1800.

In *French* v. *Carr*, 2 Gilm. 664, this court held this language sufficiently comprehensive to embrace the most minute and temporary interest in property. That was a case where a party making an improvement on the public lands had taken the benefit of this bankrupt act; his interest, though uncertain and liable to be defeated, passed to his assignee in bankruptcy.

In *Strong et al.* v. *Clawson*, 5 Gilm. 346, it was held the assignee succeeds immediately to all the rights and interest of the bankrupt, precisely to the same extent the bankrupt himself had.

In *Holbrook* v. *Coney et al.*, 25 Ill. 543, the court say, "how more comprehensive language, to vest the title in the assignee, could have been employed, it is impossible to conceive. But lest a doubt might remain, the succeeding clause of the same section has, if possible, made it still more explicit, by providing that the assignee" shall be vested with all the rights, powers and authorities to sell, manage and dispose of the same, etc., as fully as the bankrupt himself before, or at the time of his bankruptcy.

As argued in 1 Peters, *supra*, it seems to us, under this act, the moment a man becomes a bankrupt the line is at once drawn between what is his and what is subject to claims of creditors, though there is no provision in the act, as in the English statute of 21 James I, that it shall in all things be largely and beneficially expounded for the relief of creditors.

That was one of the great objects of the act. The natural faculties and capacity for exertion of mind and body, are the bankrupt's own inalienably, of which no power but death can deprive him; but as to his estate, his property of every kind and nature, whatsoever, this law does deprive him and pass it to his assignee. Of this there can be no doubt. There may be some exceptions to this, as the expectations of an heir apparent, who may die before the party who holds the estate, torts which require an action in a personal form, and kindred cases.

But it is useless to extend these remarks, as it is not denied the fee in Sand street was in Kinzie at the time of the decree in bankruptcy. That title and all its incidents passed to the assignee, and is wholly unlike the cases cited by appellant. Here the fee was vested, which Kinzie, before his bankruptcy, could have sold and conveyed. There was a present subsisting interest in him, and, as the facts show, of value at the time of the decree. Three years prior to March, 1842, in 1839, Sand street had been swept into the lake by the encroachments of its waters. In 1840, 1841 and 1842, slight accretions had commenced forming, and, by building the piers into the lake, there was an almost certain assurance they would rapidly and largely increase, and, if we are to believe Mr. Lill, who appears to know more about the condition of the shore than any other witness, they made very fast in those years, and in 1843 and 1844. This fact gave to the owner of the fee in land there a valuable property, but whether or not, Kinzie had an actual, subsisting estate in the street, depending upon no contingency. It then existed, and under the bankrupt act, it passed to his assignee.

Owning the fee in this street, Kinzie had a right to its undisturbed use until such time as the public should assert a right of easement. This right was never asserted by the public. The triangle was never used as a street, and, if acceptance be necessary to a dedication, as this court has said it is, then there was no dedication to the public use at any time. *Marcy*

v. *Taylor*, 19 Ill. 634; *Daniels* v. *The People*, 21 id. 442; *Proctor* v. *The Town of Lewiston*, 25 id. 153; *Rees* v. *City of Chicago*, 38 id. 332. Before a street, marked on a town plat, is accepted by the public by using it, the party intending to dedicate it may resume possession. *Proctor* v. *Town of Lewiston, supra.*

But it matters not when these accretions commenced. The fee in the street passing to the assignee, became the fee of the purchaser, and as Sand street, whether dedicated or not, was vacated in 1869, the use and enjoyment of the fee, with all its incidents, of which accretion was one, became the absolute and unqualified property of the purchaser. If Kinzie had not become bankrupt and assigned his estate in this land, it would have been in him, there is no question. The theory of all bankrupt laws is, to place the assignee in the same position the bankrupt occupied, or might occupy, in regard to his estate.

On the best consideration we are able to give this case we think it a plain one for the defendant, and the court did right in rendering a judgment in his favor, and the judgment must be affirmed.

*Judgment affirmed.*