# Zug *et al.* *versus* Commonwealth.

1. Under an Act of Assembly, commissioners marked high and low water lines on the Allegheny, at Pittsburg. Zug erected buildings and cast cinders, &c., into the river between these lines. On an indictment at common law against Zug, the jury by special verdict found that the buildings, cinders, &c., did "not interfere with the navigation of the river at any stage of water." *Held*, that he was not guilty of nuisance.

2. Between high and low water the owner of the soil may use the river for his private purposes if he do not interfere with the rights of the public.

3. Wainwright *v.* McCullough, 13 P. F. Smith 66, distinguished.

November 10th 1871.   Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Quarter Sessions of *Allegheny county :* Of October and November Term 1871, No. 57.

Christopher Zug and Charles Zug were indicted in the Court of Quarter Sessions of Allegheny county for nuisance. The first count charged that they had cast into the Allegheny river, "an ancient and common highway, large quantities of cinders, slag and rubbish, * * * by means whereof the navigation and free passage" along the river "has been and is greatly obstructed, so that the citizens of the Commonwealth navigating," &c., cannot pass and repass in so free a manner as they ought and had been used to before the obstructions, "to the great damage and common nuisance of all the citizens of the Commonwealth navigating, to the great obstruction of trade, &c., upon said river and against the peace and dignity of the Commonwealth," &c.

The second count charged that the defendants "unlawfully, &c., did build, erect, &c., in the said river," &c., certain frame buildings and with "force and arms" maintained and continued the buildings, and that the navigation of the river became thereby obstructed, &c., so that the citizens of the Commonwealth could not navigate, &c., the river so freely and uninterruptedly as they had the right and used to do, to the great damage, &c., concluding as the first count.

The defendants pleaded "not guilty."

The jury by a special verdict found that "the defendants were the owners and in possession of a lot or parcel of land, situate in the city of Pittsburg, in the county of Allegheny, and bounded by Twelfth, Etna and Thirteenth streets and the Allegheny river, on which is erected a rolling-mill, &c.; that on the 16th day of

[Zug *v.* Commonwealth.]

April 1858, the legislature passed 'An Act to establish high and low water lines in the Allegheny, Monongahela and Ohio rivers, in the vicinity of Pittsburg, in Allegheny county,' which act is made part hereof; that in pursuance of said act, the District Court of Allegheny county made a final decree, establishing said lines; the record of said proceedings and the diagrams therein are made part of this verdict; that the defendants have maintained and used, in connection with their said rolling-mill, certain buildings, erected between the high and low water lines established as aforesaid, to wit: One iron-clad stable, a frame shed for storing brick and clay, and a covered building of a height of about 35 feet, and used in connection with a coal railway for supplying coal to said rolling-mill, said buildings being connected together, and commencing     feet from high-water line, and extending at their greatest breadth towards low-water line 45 feet, and at their least breadth 25 feet towards said low-water line from said point of beginning, and their total length measuring along the river 223 feet; that outside of said buildings, and next to the river, there is a piece of ground of from 10 to 12 feet in width, used by defendants as a cartway, the descent on the ground from high-water line to the outside of said cartway is not more than two feet; from the outside of said cartway to the river the descent is abrupt; that defendants have, from time to time, placed cinders and slag from their said mill upon their said land, between the said high and low water lines, part of which they removed; but defendants' said deposits of cinders and slag have been and are below grade fixed by the city of Pittsburg for Tenth and Twelfth streets, which terminate in the Allegheny river, and if a grade should be established at the defendants' property like that at Tenth street, it would require considerable filling up yet; that the aforesaid buildings, so erected and maintained by defendants between low and high water lines, and the cinders and slag so deposited by them between said lines, have not and do not interfere with the navigation of said river at any stage of water."

On this verdict the court (Stowe, J.) entered a judgment of guilty, and sentenced the defendants to pay a fine of $5 and the costs of prosecution.

The Act of 1858 recites:—

" Whereas, the lines of lands on and along the shores of the rivers at and near the city of Pittsburg, in the county of Allegheny, have never yet been clearly ascertained, and as it is important to the owners of such lands, the persons navigating the waters of, and the corporations adjacent to such rivers, and to all parties interested, to know and have their several rights and privileges in extension and limitation ascertained and defined."

It requires the District Court of Allegheny county to appoint three commissioners to examine the shores of Allegheny, Mo-

nongahela and Ohio rivers, and mark the lines of ordinary low and high water along those rivers, such lines " to be laid out along said shores in such manner and position as will most perfectly secure and perpetuate the navigable channel of said rivers and best promote the safety and convenience of vessels, &c., navigating the same, and as will be most suitable in all respects for the general benefit of the public at large."

The commissioners were required to make a correct map of their work and return it to the District Court, and when approved by the court, it should be recorded and the lines "shall for ever after be deemed, adjudged and taken firm and stable for the purposes aforesaid."

Entering the judgment of guilty was assigned for error by the defendants, on removing the record to the Supreme Court by writ of error.

*M. W. Acheson* and *T. M. Marshall,* for plaintiffs in error.— The *obstruction* of the navigation is what is the subject of an indictment : Angell on Water Courses, sec. 55, 562; Whart. Am. Crim. Law, sec. 2408.   Between the *natural* high and low water mark the riparian proprietor is the absolute owner of the soil subject to right of navigation : Railroad Co. *v.* Trone, 4 Casey 206; 3 Kent 562, 563, 571 ; Naglee *v.* Ingersoll, 7 Barr 201 ; Frankford *v.* Lennig, 1 Am. Law Reg. 357 ; Arnold *v.* Mundy, 1 Halstead 1; Dutton *v.* Strong, 1 Black 31; Angell on Tide Water 196.

*W. B. Rodgers* and *R. Woods,* for Commonwealth, defendant in error.—The absolute ownership of land on navigable rivers extends only to high-water mark : Bailey *v.* Miltenberger, 7 Casey 37 ; The Commonwealth *v.* Fisher, 1 Penna. R. 462 ; Wood *v.* Appal, 13 P. F. Smith 210; Wainwright *v.* McCullough, Id. 66 ; Tinicum Co. *v.* Carter, 11 Id. 21.   Actual obstruction was not necessary to justify the judgment: Resp. *v.* Caldwell, 1 Dallas 150.

The opinion of the court was delivered, November 20th 1871, by
AGNEW, J.—If this case was intended to test the right of a party to obstruct navigation between high and low water lines, by means of buildings or deposits upon the shore, its selection has been inappropriate, as the facts found in the special verdict tend to negative the existence of any obstruction.   The verdict makes the diagram filed by the commissioners under the Act of 16th April 1858, to establish high and low water lines in the Allegheny, Monongahela and Ohio rivers, a part of the finding.   By that diagram it distinctly appears, that the land upon which the Messrs. Zug erected their buildings and laid out their outside cartway lies

upon the natural bank.   The verdict finds that the descent of this ground, from the high-water line marked by the commissioners to the outside of the cartway, is not more than two feet, and that from the outside of the cartway toward the river the descent is abrupt.   It is manifest from the findings that the erections are not on the shore.   The verdict also finds that the deposit of cinders and slag between the high and low water lines is not up to the grade of the streets of the city terminating in the river, while it fails to find that these deposits were made upon the natural shore.   The finding then concludes with this controlling fact, to wit: " that the aforesaid buildings so erected and maintained by defendants, between high and low water lines, and the cinders and slag so deposited by them between said lines, have not and *do not interfere with* the navigation of said river at any stage of water."

The effect of all the . conclusions of fact clearly is, that the erections and deposits complained of in the indictment, are not obstructions to the navigation.   The learned judge who pronounced the sentence evidently founded his judgment on the fact that these erections and deposits were obstructions to the navigation, and possibly the verdict may not have followed the evidence closely.   But be this as it may, we can infer nothing contrary to the finding of the jury, and if the facts thus found do not constitute a nuisance we must give judgment accordingly.   Failing to find that the obstructions set forth in the indictment (which is at common law) occupy the shore of the river, and finding that they are not obstructions to navigation at any stage of water, the verdict leaves nothing for the law to adjudge to be a nuisance.   *Non constat* that these erections and deposits are not placed where they may lawfully be, while it does appear affirmatively they are not injurious to the rights of the public.

This is not the case of an ordinary highway, upon which it is unlawful to build ; but of a species of property which the owner may use for private purposes, provided his use do not interfere with the rights of the public.   The rights of an owner between high and low water marks differ essentially from those of an owner of the soil over which a public highway passes.   There is no highway for travel on foot, by horse or carriage, along the shore of a navigable stream, by force merely of the public right of navigation.   A stream, at high or low water stage, is a highway for boats or other craft ; and as to these the verdict strips the alleged obstruction of any illegal character.   The operation and effect of the proceedings under the Act of 1858 are not fairly raised in this case.   Had the buildings and deposits been found to. be injurious to, and to interfere with the right of navigation, perhaps a different question might have arisen, upon which, however, we express no opinion.   The case of Wainwright v. McCullough, 13 P. F. Smith 66, referred to by the learned judge below, does

[Zug *v.* Commonwealth.]

not touch this. It merely decided that the low and high water lines of the commissioners did not establish boundaries between individuals; either those running toward the river or those lying on the opposite sides of a channel of the river constituting a part of the public domain. They were intended to regulate the rights of public in respect to navigation, and to prevent private rights from the being exercised to the prejudice of the public interests. When a case shall arise, directly involving the effect to be given to the high and low water lines of the commissioners, we must decide it; but now we can only say that this case does not call for any opinion on that question.

Upon the facts set forth in the special verdict we must reverse the judgment of the Court of Quarter Sessions, and give judgment thereupon for the defendants; and order that they may depart from the court without day.