# NORTH. CENT. RY. CO. v. HOLLAND.

ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 19, 1887—Decided, January 3, 1888.

A defendant railroad company was formed under an act passed in 1854 and consolidating three other companies severally organized prior to the constitutional amendment conferring power to alter, revoke or amend any charter of incorporation thereafter granted, which act provided that the company should be subject to the provisions of the general railroad act of February 19, 1849, P. L. 79, whereby the power was reserved to resume, alter or amend any charter granted thereunder. In 1883 the company, in the improvement of its road-way, laid a track in front of plaintiff's dwelling. on property bounded in his title by the wall line and so near thereto as to cut away part of the porch and cellar-way, and in the running of its trains, to obstruct ingress and egress, and the access of light and air, to shake the walls and to fill the house with smoke and cinders, for which injuries the plaintiff brought an action in trespass on the case : *Held,*

1. That evidence of plaintiff's title, of the foregoing injuries and of the depreciation in the value of the property as a measure of damages therefrom, were properly received and submitted to sustain such form of action.

2. That the consolidating act of 1854, with the provisions of the act of 1849, subjected the defendant company to the power of control exercised by the people in § 8, article XVI., of the existing constitution, requiring compensation for property taken, injured or destroyed by municipal or other corporations in the construction or enlargement of their works.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 366 January Term 1887, Sup. Ct.; court below, No. 42 April Term 1884, C. P.

This was an action on the case brought on March 6, 1884, by Thomas Holland against the Northern Central Ry. Co., to recover damages for injuries to his property on Water street in the borough of York. The defendant pleaded, not guilty, not guilty with leave to justify.

At the trial on October 11, 1886, the facts appeared: The

York & Maryland Line R. Co. was incorporated by the act of
March 14, 1832, P. L. 122, with power given in § 12 of said
act to locate a route beginning at the north line of the borough
of York and extending southwardly to a point on the Mary-
land line, "so as to do the least damage to private property,
and the said road shall not be more than four rods wide." By
a supplementary act of April 15, 1853, P. L. 450, this com-
pany was authorized to lay down an additional track, between
the Maryland line and the borough of York, to improve their
present track and their road-bed, to change its location, etc.,
etc. By the act of May 3, 1854, P. L. 537, the legislature
authorized the consolidation of the York & Maryland Line R.
Co., the York & Cumberland R. Co. and the Susquehanna R.
Co., so as to form and constitute one corporation, to be known
as the Northern Central Ry. Co., under which act an organiza-
tion was effected. By the fourth paragraph of § 1 of this
consolidating act, it is declared that the said consolidated com-
pany shall be subject to the provisions of the general railroad
act of February 19, 1849, P. L. 79, by § 20 of which act it is
provided: "That if any company incorporated as aforesaid,
shall at any time misuse or abuse any of the privileges granted
by this act or by the special act of incorporation, the legisla-
ture may revoke all and singular the rights and privileges so
granted to such company; and the legislature hereby reserves
the power to resume, alter or amend any charter granted under
this act, and take for public use any road constructed in pur-
suance of such charter."

The plaintiff offered to put in evidence the deeds referred
to in the charge of the court to show title, to be followed by
the testimony of himself and of other witnesses that at the
time of his said purchase and for a long period prior, the tri-
angular piece of ground lying between the said premises and
South Water street had upon it a pavement of brick, extend-
ing from the front line of said premises to and upon said high-
way—a continuation of the pavement or sidewalk—also a
porch with steps leading from said sidewalk to the front door
of plaintiff's said dwelling house; a cellar door and cellar-way;
also a gate-way and gate leading to the yard of said premises
from said sidewalk and pavement; that in the front wall of
said house were the said front door, two windows on the first

floor, three windows on the second floor, and three windows on the third floor, all opening over and upon said triangular piece of ground. That the said pavement or sidewalk, front door, porch, gate-way, and cellar door and cellar-way, were the only means of access and approach from said highway to said dwelling house and premises. That through said windows were, at the time of his said purchase and for a long time before, and up to the time of the injury complained of, admitted freely and uninterruptedly, air and light over the said triangular piece of ground into the said dwelling. That the said easements of access, passage, light and air, afforded to plaintiff's premises by, through and over said triangular piece of ground, by said windows, doors, porch, gate-way, and cellar door and way, were at the time of plaintiff's purchase and for a long time before of a public, notorious, apparent and continuous character and imposed upon said triangular piece of ground for the benefit of said dwelling house and premises so purchased by plaintiff by a prior and common owner of both the said premises.

That on or about the 15th of August, 1883, the defendant, without the consent of the town council of the borough of York, and without legal authority, entered upon said triangular piece of ground, and cut away and removed part of the plaintiff's porch and cellar-way, and laid a new railroad track upon said triangular piece of ground and upon said highway about seven feet nearer to said plaintiff's dwelling house than the old track; that thereby the access and approach to the dwelling house of plaintiff is rendered difficult and dangerous, and at times by the passage of south-bound trains impassable. That trains running south pass within twelve to fifteen inches of the corner of the warehouse adjoining plaintiff's property on said public highway, and within about nineteen inches of plaintiff's gate-way, and within about four inches of plaintiff's porch, and within an average of about three feet of the front of plaintiff's dwelling house: That by reason of the closer proximity of passing trains to the plaintiff's house since the laying of said new track, the walls of plaintiff's dwelling have been shaken and cracked, his house filled with smoke, cinders and noisome smells necessitating the closing of his said front windows, and thus depriving him of light and air: To be fol-

lowed by proof showing how much said property has been depreciated in value by the laying of said new track and the causes aforesaid: This for the purpose of having the amount of the injury to plaintiff determined by the jury in damages.

The offer was objected to, inter alia, because:

6. The defendant was incorporated by consolidation of other companies in 1854, the other companies having all been incorporated prior to 1854. That one of the companies consolidated, to-wit: The York and Maryland Line Railway Company, was incorporated in 1832, and that under its charter the road was built through Water street, and the width of railroad fixed at four rods in front of property which plaintiff alleges he owns. That the present railroad is not beyond or outside of said four rods. That defendant being liable only under its charter, accepted before the adoption of the present constitution, to the payment of damages for land actually taken and not having accepted the present constitution and no part of the plaintiff's land being taken, or alleged to be taken, the alleged evidence is not legal and proper evidence in this case.

7. The alleged facts if they show any cause of action sustain trespass and not an action on the case and are therefore not legal or proper evidence in this case.

The objections were overruled and, under exception taken, evidence was introduced sustaining the offer.[8]

The court, JOHN GIBSON, P. J., charged the jury and answered the points presented, after quoting the incorporating acts referred to, and also § 8, article XVI., of the constitution, as follows:

In reference to this act, I say this, in as near as possible the language of Mr. Justice GORDON, in the case of the Penn. R. Co. v. Duncan, 111 Pa. 352: "This corporation therefore cannot claim exemption from this constitutional legislation, and from the nature of the charter it must necessarily come under the provisions of the new organic law. The defendant's charter must be regarded in the light of a contract, and is in all particulars inviolable unless in the charter itself, or in some general or special law, subject to which it was taken, there is a power reserved to the general assembly to alter or amend, and, as in that case, the legislature might intervene to modify

the charter of a corporation, so might the constitutional convention."

How does this action arise? The Northern Central Railway Company had the right to use one of the streets of the borough of York, and to locate their road upon it, and that authority included sidings and switches, and if such are located in one place, they have a right when necessity requires, to place them elsewhere. And there is conferred by the act of 1853, the power to construct a double track.

In one case the Supreme Court said: "If in the spirit of accommodation the company was willing for the time being to confine itself to the south side of the street, it did not thereby strip itself of the power of going north when it found it necessary to lengthen the curve of its side track, in order to reach its shop and yards in safety:" C. & P. R. Co. v. Spear, 56 Pa. 335.

The complaint in this case is that the company brought their rails so near to the property of the plaintiff as not only to be disagreeable, but dangerous; that they have taken his pavements, and destroyed his easements, the right to free and easy access to and from his house, and in supplying his house with provisions and coal, and the annoyance occasioned by the passing of trains, inconveniences of noise, and volumes of smoke, dust and cinders; that he can have no enjoyment of his porch, or of the front of the house the windows of which must be kept almost constantly closed; that the track came so close that cars came to within from four to six inches of his porch, and that at the corner of the adjoining lot of Mr. Croll, a man could not pass while a train was passing, without danger to his life, and thus there was risk of life. All these inconveniences have been detailed to you by the witnesses. I must say to you that for such consequential injuries, a common law action will now lie, being occasioned by the construction, operation and works of a railroad. The question however, gentlemen of the jury, in this case, is not whether or not the Northern Central Railway Company, in the exercise of its rights, in the use of the street, occasioned the annoyances complained of by the construction of their double track; the question of liability in this case arises from peculiar circumstances. It is not the use of the street alone, but of a portion

of a lot of ground, fronting upon that street, which is the foundation of the claim of this plaintiff.

The railroad enters Water street in the borough of York, some distance north of Market street, and after passing Market street it approaches Mason alley, or avenue; there the track curves, as appears by the evidence of persons, and by the drafts; and on that curve it leaves Water street at or about Mason alley, and the curve begins just before reaching the premises of the plaintiff. It is in passing by the premises of the plaintiff, that it leaves the line of Water street. The front of the plaintiff's house is not on the line of Water street, but faces that street at an angle. His house and the adjoining house on the south are at an angle described by the witnesses, of about two feet on the northern end of the plaintiff's house, and thirteen feet at the other end of the house. And the same angle extends along Mr. Smyser's house adjoining, the track at that place making a reverse curve gradually going south towards Baltimore. Before the construction of this double track, the main track of the road was nine feet and eight inches from the plaintiff's porch. By the construction of a double track, the inner rails are within four feet two inches of his porch.

The peculiar situation of this house and of the railroad track there is caused in this way: The two houses, that is, that of the plaintiff and that of Mr. Smyser, originally faced Water street, and were on the street line. Such was their situation when the deed was made by the heirs of John Barnitz, and George Barnitz, both deceased, to Edward Chapin, Esq., on December 30, 1862.

On the 31st of March, 1863, Mr. Chapin made a declaration of trust under his hand and seal, that the said property was bought and paid for by the Northern Central Railway Company, and that he held the legal title in trust for the said railway company. While this was the position of the title, the railway company cut away the front of the house, as described to you by the witnesses, and removed the pavement on Water street, to the front of the houses, and replaced the same there with curbstones, and crossed the triangle of ground, and constructed a switch, part of which was owned by them, and part by Tyler & Croll, merchants, having a warehouse on Water street, north of Mr. Holland's house.

The railroad company thus holding the equitable title, the legal title being in Mr. Chapin, for their convenient use, he on the 21st day of March, 1866, sold and conveyed by deed of that date, to John S. Croll, two contiguous lots of ground, one of them being described thus : " Bounded on the east by the railroad, in South Water street," and in another place, " The line on Water street, thirty-three feet nine inches." It is a part of these premises that constitutes the locus in quo. The other lot conveyed to Mr Croll was north, adjoining this one. At this time the front of the house now occupied by the plaintiff, was set back as described at an angle. But the deed described the lot conveyed to Croll, as above stated, to the line on Water street, and bounded on the east by the railroad in Water street.

John S. Croll and wife, by deed dated April 9th, 1867, conveyed to Sarah Jane Buckingham what is described in the deed, as all that certain brick dwelling house, and part of a lot or piece of ground, situate on the west side of South Water street, and the railroad in the borough of York aforesaid, and then it is described by metes and bounds, and the line running eastward, is described as follows : " Thence eastwardly along the said Zachariah W. Smyser's property, to the southeastern front corner of the present brick house hereby conveyed, on said Water street or railroad, and thence along the present front wall, in a northerly direction, thirty-seven feet four inches to the place of beginning.

The title of this house was conveyed to William Hay, Esq., and by him and wife to F. F. Buckingham, and by John Mayer, assignee of F. F. Buckingham to Thomas Holland, this plaintiff, with the same description in the deed. Thus the title to the dwelling house and the lot to the north and west of it was conveyed to the plaintiff, but there was no conveyance of the space in front of the house, between it and the Water street line.

As a matter of course the right of ingress and egress to the house or premises conveyed, passed with the deed, so far as Mr. Croll could convey the same. There was a right of way of a convenient character, the enjoyment of light and air, and that free and pure, so far as it was in the power of Mr. Croll to convey the same. Now then comes the difficulty. Did the

Charge of Court below.

railroad company convey to Mr. Croll, all the rights they themselves possessed, all the property they possessed to the line of Water street? The deed of Mr. Chapin contains no reservations. There was conveyed to Mr. Croll a lot of ground, bounded on the east by the railroad and South Water street, the line on Water street thirty-three feet and four inches. Owning therefore the title to the triangle of ground in front of Mr. Holland's house, Mr. Croll conveyed necessarily all the easements proper to Mr. Holland, for the convenient use of his dwelling house, and lot conveyed to him by Croll. What were the rights then of the railroad company? If Mr. Holland negligently bought with another owner in front of him, the railroad company were equally negligent, in the assertion of their rights, in the opinion of the court. It is said that because the railroad company had a switch on that ground they had also an easement or right of way. To that extent they had; but where was that switch; how many feet from Mr. Holland's house? I don't know that the exact distance of that switch has been proven, but you can remember from the testimony, what was said in regard to it. This they were entitled to; and they would also be entitled to a track replacing that switch, but what other rights had they?

The street, Water street, had been widened by themselves and they owned it—the railroad company. Did that give them the right to use it as though it were a street of the borough, by reason of any title they had had to it? I think not. The only right remaining to them, was the right to construct a double track if they so determined. And as the space used by them, that is the space created by setting back the front of these houses, was open, and not covered by buildings, and had been occupied already by a switch, and as Mr. Holland had a deed only for the line of his house, if the construction of a double track required the use of that ground, I think they could take it for that purpose. But in doing so, although it was the construction of a double track, if it could be done only by injuring private property, they are liable for that injury, because they had allowed the title to pass from them, and it was therefore the same as an original taking. In fact it appears from the principle of the case of Penn. R. R. Co. v. Jones, 50

Pa. 413, that independently of the constitutional provision, an action on the case would lie, for interruption or disturbance of an easement, when the company had purchased the land, held a secret trust, the title being in an individual, who sold the same to Mr. Croll, and that grantee not conveying that part of the lot called the triangle, but leaving the same open as a street, with pavement and curbstone, and full enjoyment of easements of ingress and egress and light and air, without reservation of any kind, and then summarily taking the use of that ground, and removing the curbstones and pavement and part of the house, subjecting it to the inconvenience complained of. I say that with all this, on either ground, in my opinion, they are liable to this action on the case, for interruption of easements and for consequential damages arising therefrom, and for the inconvenience and annoyances of the noise and smoke, and cinders, and dangers to ingress and egress from proximity under the circumstances of this case, as elements of damage, in the depreciation of the value of the property. But in all such cases the damages are measured in this way: [The jury must ascertain what the property would have sold for, unaffected by the occupation of it by the railroad, and what it would have sold for as affected by that occupation. It is the depreciation in value, if any, of the property resulting from this occupation by the railroad, that is the measure of damages.][1] The advantages and disadvantages are to be taken into consideration. But there have been no advantages testified to in this case. The whole question is, has the plaintiff's property been injured?

How it has been injured you will determine from the evidence, and from the elements of damage mentioned, and the amount of damage is to be estimated by the difference in value as stated. That is, the injuries, if you find them to be such, are what are called elements of damage, but the damage itself is to be measured by the testimony of witnesses, as to the value of the property before and the value of the property after the occupation of it by the railroad. From what the testimony may be, you are to determine as best you can what is the amount of damage if you find that there is any. . . . .

The court is requested to charge for the plaintiff:

3. The Northern Central Railway Company is liable to

answer in damages to the plaintiff for any injury done to his property by the construction or enlargement of its railroad, to the extent that said property was depreciated in its market value by reason of such construction or enlargement of its railroad.

And if in the laying of a second track in August, 1883, by the defendant, the jury find that the property of Thomas Holland was injured and depreciated in market value by reason thereof, they shall allow him damages to the extent of such depreciation.

Answer: This point is affirmed as explained in the general charge.[1]

The court is requested to charge for the defendant:

1. That the defendant has the charter authority to acquire a right of way four rods in width.

Answer: This point is not applicable to this case in the opinion of the court.[2]

2. That in cases where the defendant has, pursuant to its charter authority, acquired a width of right of way, not exceeding four rods, and constructed its railroad thereupon, any subsequent increase of the number of tracks not exceeding two, or shifting of the tracks from one part to the other of such right of way, is neither an act done in construction or enlargement of its works, and from any damages resulting therefrom to adjoining owners, there is no liability, constitutional or otherwise.

Answer: This point is refused.[3]

3. That the deed to Chapin dated December 30, 1862, in connection with the declaration of trust made by him, under date of March 31, 1863, had the effect of vesting the title, at least as against the plaintiff in the present action, in the said defendant as right of way to the portion of the lot in front of plaintiff's premises embraced in the aforesaid deed to Chapin, and declaration of trust, and not conveyed by Chapin to those under whom plaintiff claims; no part of said portion being a distance of more than thirty-three feet from the centre line of the tracks of the defendant, laid when such right of way was acquired, and the laying of additional tracks or shifting of the original tracks within such right of way, is not such construction or enlargement of the works of defendant as would entitle the plaintiff to recover damages.

Answer: This point is refused.[4]

4. That the act of the defendant in procuring title, by virtue of Chapin's purchase and declaration of trust, and evidencing the boundary line of its right of way by shifting the front wall of the houses had the effect of defining as the western boundary of its right of way, the line of the houses so shifted, and the right of way or ingress to said houses if existing, constituted at most, an easement or right of passage over said right of way, concurrent and not inconsistent with the uses of defendant, for its corporate purposes, and the verdict must be for the defendant.

Answer: This point is refused.[5]

6. That the defendant being liable only under its charter, accepted before the adoption of the present constitution, to the payment of land actually taken, and not having accepted the present constitution and no part of the plaintiff's land having been taken, the plaintiff is without remedy, and the verdict should be in favor of the defendant.

Answer: This point is refused.[6]

7. If the defendant in any event is liable for damages, a special statutory remedy having been provided for its recovery, namely, by the appointment and assessment of viewers, such remedy is exclusive, and the present form of action cannot be sustained.

Answer: This point is refused.[7]

The verdict of the jury was in favor of the plaintiff for $1,013.75, and judgment being entered thereon, the defendant company took this writ, assigning for error:

1. The affirmance of plaintiff's third point.[1]

2-7. The refusal of the defendant's points.[2 to 7]

8. The admission of plaintiff's offer.[8]

*Mr. Horace Keesey* and *Mr. V. K. Keesey*, for the plaintiff in error:

1. The legislature cannot change the obligation of a contract or interfere with the vested rights of property: Dartmouth College *v.* Woodward, 4 Wheat. 518; and defendant's charter must be regarded in the light of a contract and inviolable, unless in the charter itself, or in some statute subject to which it was taken, there is a power reserved to the general

assembly to alter or amend: Penn. R. Co. v. Duncan, 111 Pa. 360.

2. A railroad company in the exercise of its right of eminent domain, is not liable to a property owner fronting on a public street for damages caused by the passage of trains, cinders, smoke, and hindrance to the passage of carriages: Struthers v. Railway Co., 87 Pa. 282; Railroad Co. v. Speer, 56 Pa. 325; N. Y. & E. R. Co. v. Young, 33 Pa. 175; Snyder v. Railroad Co., 55 Pa. 340.

3. The occupation of the triangle by the defendant company under its title in Mr. Chapin, in trust, being open, visible and notorious, was notice to all persons of the right of way over the same, particularly to Mr. Croll, the predecessor of the plaintiff, living within one hundred yards of the dwelling and using a warehouse adjoining it. The boundary of said property in all the deeds from Mr. Croll to Mr. Holland inclusive, is "along the front wall of said brick house." At most the plaintiff had an easement over said triangle, not inconsistent with the uses of the railroad for its corporate purposes.

4. But if the defendant be liable for consequential damages in this case, the court erred in the admission of testimony as to the measure of damages. There was testimony that the track had been frequently changed back and forward at the point in controversy, and at times it was much nearer than when complained of. The true measure of damage was not the difference in value immediately before and after the laying of the second track in 1883.

5. The cutting down of porch, cellar-way, etc., was evidence in trespass, not in case. There was no excavation or embankment made; consequently no liability for damages, nor for depreciation of value, under the act of 1849: N. C. & F. R. Co. v. McChesney, 85 Pa. 522.

6. No fair construction of the fourth paragraph of § 1, act of May 3, 1854, P. L. 537, gives the legislature the power to resume, alter or amend the charter granted to the defendant company. A law which deprives a party of a right must be clear and explicit. The act of 1849, reserving the power to resume, alter or amend, applies by its terms only to charters granted under that act.

*Mr. A. N. Green* and *Mr. David Wills*, for the defendant in error :

1. Neither the charter of the defendant company, nor those of its constituent companies contain any provisions for the assessment of consequential damages, hence case is an available and proper remedy: Harrisburg v. Crangle, 3 W. & S. 460 ; McClinton v. Railroad Co., 66 Pa. 404 ; Dimmick v. Brodhead, 75 Pa. 464 ; Gilmore v. Railroad Co., 104 Pa. 275 ; Brown v. Powell, 25 Pa. 229 ; Penn. R. Co. v. Duncan, 111 Pa. 352 ; P. & R. R. Co. v. Patent, 17 W. N. 198 ; Railroad Co. v. McLanahan, 59 Pa. 23 ; Justice v. Railroad Co., 87 Pa. 28 ; Railroad Co. v. Bruce, 102 Pa. 23 ; Hoffer v. Canal Co., 87 Pa. 221.

2. The fourth paragraph of § 1, act of May 3, 1854, P. L. 537, makes the defendant company subject to constitutional legislation, and it is clearly brought under the provisions of § 8, article XVI., of the constitution, and is liable for any injury done to private property by the enlargement of its highways : Penn. R. Co. v. Duncan, 111 Pa. 352 ; Reading v. Althouse, 93 Pa. 400 ; Pusey v. Allegheny, 98 Pa. 522 ; Duncan v. Railroad, 94 Pa. 435.

3. The plaintiff bought his house and lot with the curbstone and pavement, as an apparent and continuous easement, and takes its benefit though not mentioned in the deeds under which he holds : Cannon v. Boyd, 73 Pa. 179 ; Overdeer v. Updegraff, 69 Pa. 110 ; Seibert v. Levan, 8 Pa. 383 ; Kieffer v. Imhoff, 26 Pa, 438 ; Phillips v. Phillips, 48 Pa. 178 ; Penn. R. Co. v. Jones, 50 Pa. 417.

4. Upon the measure of damages, there is no reason in this case for a departure from the rule of Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411.

OPINION, MR. JUSTICE STERRETT :

This action of trespass on the case against the Northern Central Railway Company was brought by plaintiff below to recover damages for injuries to his property on South Water street, in the borough of York, caused by the enlargement of the company's roadway and works at that point in 1883.

The proof of title was quite sufficient to warrant the conclusion that the premises, alleged to have been injured, were

owned and occupied by plaintiff at the time the company widened its roadway and enlarged its track capacity. It is unnecessary to review the evidence on that subject, for the reason that it is fully presented in the general charge. For the same reason, it is unnecessary to notice specially the evidence showing location of the property, means of ingress and egress to and from Water street, facilities for light, air, etc., before and after the enlargement, and the effect of the change on the market value of the property. The evidence on all these subjects was rightly received and properly submitted to the jury. It tended to show, among other things, that in August, 1883, the railway company, without the consent of the borough authorities, or any authority whatever, entered upon the triangular piece of ground between the roadway and plaintiff's dwelling house, cut away and removed part of the porch in front thereof, and there laid down a new railroad track, about seven feet nearer the house than the old track, was located; that the approach to the house was thereby rendered difficult and dangerous, and, at times, impassable; that south-bound trains afterwards passed within a foot of the warehouse adjoining plaintiff's property, and within a few inches of the porch and gate-way; that in consequence of the closer proximity of passing trains to the house, the walls thereof were shaken, the house itself filled with smoke, cinders, and offensive smells, necessitating the closing of the front windows and door.

The evidence, thus briefly adverted to, was fairly submitted to the jury, and, if believed by them, as it appears to have been, fully warranted the rendition of a verdict which should not be disturbed unless some radical error was committed by the court during the progress of the trial.

It is claimed that a recovery of damages should not have been permitted in the present form of action; but in view of the facts disclosed by the evidence, and doubtless found by the jury, that position is wholly untenable. For injuries, such as are complained of in this case, an action of trespass on the case will undoubtedly lie: Penn. R. Co. v. Duncan, 111 Pa. 352. In holding that trespass on the case could be maintained there was no error.

The main contention is that the learned judge erred in deciding the company was liable in damages for consequential

injuries under section 8, of article XVI., of the constitution; and we are reminded that, under the Dartmouth College case, "its charter must be regarded in the light of a contract, and is in all particulars inviolable, unless in the charter itself or in some general or special law, subject to which it is taken, there is a power reserved to the general assembly to alter or amend," etc.

Conceding, for the sake of argument, that the respective charters of the original companies, which, by consolidation, formed the Northern Central Railway Company, might possibly exempt them from such liability, it is not so in regard to the charter of the latter company. The consolidation act of May 3, 1854, P. L. 537, to which it owes its corporate existence, subjects it to the power of the general assembly. That act, consolidating the York and Maryland Line Railroad Company, the York and Cumberland Railroad Company, and the Susquehanna Railroad Company, so as to form and constitute one company or corporation, to be known as the Northern Central Railway Company, provides, in the 4th article of the 1st section thereof, that the consolidated company shall be subject to all the provisions of the act of February 19, 1849, P. L. 79. The 20th section of the latter act declares: "That if any company, incorporated as aforesaid, shall at any time misuse or abuse any of the privileges granted by this act of incorporation, the legislature may revoke all and singular the privileges so granted to such company. And the legislature hereby reserves the power to resume, alter, or amend any charter granted under this act, and take for public use any road constructed in pursuance of such charter." This clause, which is virtually part of the charter of the Northern Central Railway Company, is comprehensive and not of doubtful import. It contains a clear and explicit reservation of power "to resume, alter, or amend" any charter granted under it or accepted subject to its provisions. The power thus reserved may of course be exercised by the people in their sovereign capacity. This was done when they adopted the present constitution, the 8th section of the 16th article of which ordains that "municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property, taken, injured, or destroyed by the

construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

There is nothing in the act consolidating the three constituent companies that exempts the present company from the provisions of the act of 1849, or from the constitutional provision above quoted. · On the contrary the latter was evidently intended to embrace just such cases as the one now under consideration ; and, we have no doubt, the plaintiff in error is justly subject to its provisions.

Neither of the specifications of error is sustained.

Judgment is affirmed.