# Freeland *v.* Pennsylvania Railroad Company.

| 197 | 529 |
| 20 SC | ³579 |
| 197 | 529 |
| 25 SC | ¹581 |
| 197 | 529 |
| 212 | ⁶625 |
| 197 | 529 |
| 213 | ¹386 |

*Waters—Rivers—Boundary—Title to soil between high and low watermark.*

In Pennsylvania wherever a stream is navigable and it is made the boundary of a grant by the state, the title passes to low watermark with the qualification that between high and low watermark the grantee may use the land for his own private purposes, provided that in such use of it, he does not interfere with the public rights of navigation, fishery and improvement of the stream.

*Waters—Definition of alluvium.*

Alluvium is a term applied to those accumulations of sand, earth and

loose stones or gravel brought down by rivers, which when spread out to any extent, form what is called alluvial land. It is the addition made to land by the washing of the seas or rivers; and its characteristic is its imperceptible increase, so that it cannot be perceived how much is added in each moment of time.

A riparian owner has the right to remove and sell sand which has been deposited as an alluvium between high and low watermark on the bank of a navigable stream, provided that he does not interfere with any public right of navigation, fishery or improvement; and if a railroad company, for its own purposes and not for the improvement of the river, erects a structure on the opposite bank in such a way that the direction and flow of the current are changed, and the sand bank is swept away and future alluvium prevented, the riparian owner may in an action of trespass against the railroad company recover damages both for the sand bank swept away, and for the loss of future alluvium.

Argued May 22, 1900. Appeal, No. 112, Jan. T., 1900, by defendant, from judgment of C. P. Perry Co., April T., 1899, No. 5, on verdict for plaintiff, in case of Charles Freeland and George W. Freeland v. The Pennsylvania Railroad Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass for loss of sand bank and alluvium. Before LYONS, P. J.

The facts are fully stated in the opinion of the Supreme Court.

Plaintiff's points among others were as follows:

2. That the plaintiffs, being the owners in fee of the messuage situate in the township of Howe, Perry county, and described in the plaintiffs' statement, one boundary of which being the Juniata river by its several courses the distance of 117 perches or thereabouts, are in law the owners of the soil to low watermark in the said river, and may use and enjoy the space between high and low watermark in any lawful way not interfering with the public right of the navigation of or fishing in the stream or the rights of other riparian owners. *Answer:* Affirmed. [1]

4. That such alluvium so deposited upon or added to such lands becomes, eo instanti, the property of the owners of such lands for the same estate as the owners have or enjoy in the lands themselves as wholly and completely as if originally a part of the said lands; that this is, at law, an incident to all real property subject to the deposit of alluvium and when once

deposited, so long as it remains unremoved by the action of the water, constitutes in law and in fact a part and parcel of the land itself. *Answer :* This is affirmed. [2]

5. That the accretion of alluvium being an incident to property, depositing alluvium by abutting waters to or upon such lands, as a feature of riparian lands, the tendency or habit of adding constitutes a property in such tendency or habit which is vested in and belongs to the owner of such riparian lands, giving to such owner a vested right in future and undeposited alluvium as an inherent and essential attribute of the original property as the owner of the tree to its fruits or of flocks and herds to their natural increase, and a destruction of which by the wrongful act of another will be compensated in damages at law. *Answer:* Affirmed. [3]

6. That as the ownership of the plaintiffs in this action, in the soil of their messuage, in the statement described, extends to low watermark of the Juniata river, any alluvium cast or deposited beyond the bank, or upon the shore or between high and low watermark of the river upon the said messuage was the absolute property of the plaintiffs, not only as already deposited or cast, but in the tendency to cast or deposit future alluvium in the places named, and the destruction of such alluvium as well as the tendency of the waters of the river to deposit future alluvium, by the wrongful act of another may be compensated to the plaintiffs by proper damages at law. *Answer :* Affirmed. [4]

7. That if it is contended that the embankment constructed by the defendant company in the Juniata river at Trimmer's rock was in the exercise of the right of eminent domain, then such embankment was in law and under the evidence of the case a construction or enlargement of its works, highways or improvements within the meaning of the 8th section of the 16th article of the constitution of this commonwealth, and, if such construction was the cause of the injury or destruction of alluvium sand deposits of the plaintiffs, and the habit or the tendency of the river to make future deposits of such sand upon the messuage of the plaintiffs, then the defendant company is liable to the plaintiffs in lawful damages for such injury or destruction. *Answer :* Affirmed. [5]

8. That if it is contended that the embankment constructed

by the defendant company was within the bed and within low watermark. of the Juniata river and was in the exercise of the right of riparian owner, then that it is in law not in the exercise of any such right, since as riparian owner the defendant company had no right in the bed of the river within the point or line of low watermark and was in contravention of the rights of the public and guilty of an act of trespass; and, if such construction was the cause of the injury or destruction of the plaintiffs' banks of alluvium sand, and the habit or tendency of the river to make future deposits of such sand upon the messuage of the plaintiffs, then the plaintiffs have suffered in a special way, differing in kind from the injury to the general public, and the defendant company is liable to the plaintiffs for such injury or destruction in damages. *Answer:* This is affirmed provided that you find the fill or embankment put in the river by the plaintiffs was within or below the line of low watermark and caused the injury of which the plaintiffs complain. [6]

10. If the jury believe that at and immediately before the construction of the defendant company's embankment in the change of its highway or tracks, the natural or existing channel and course of the Juniata river, with its natural and existing currents and eddies, had deposited the banks or quarries of alluvium sand upon the lands of the plaintiffs in their statement described, and that by reason of the habitual and customary action of the said river through a long period of time preceding, to make similar deposits of alluvium sand, it was the fixed or habitual action and tendency of said river to make such alluvium deposits, then the sands so already deposited as well as the vested right to future deposits of such sand, was the property and estate of the plaintiffs; and, if the defendant company, either under the exercise of the right of eminent domain or those of a riparian owner or both, constructed the said embankment in the change of its highway or tracks, whether within the bed of the river or without, and such construction so changed the bed, channel, course, currents, eddies and flow of the said river as to carry away and destroy the said banks of alluvium sand of the plaintiffs already deposited and destroyed, and annulled the tendency, habit or action of the river to cast future deposits of such alluvium sand upon their lands as it had done in the past, then the defendant company is liable to the plaintiffs for such

wrong and injury done in proper damages at law.  *Answer :* Affirmed. [7]

Defendant's points among others were as follows :

1. The Pennsylvania Railroad Company is clothed with the right of eminent domain and has a right to change the location of its tracks in order to improve its line, and if after entering upon the river bank and bed for the purpose of improving its line, unforeseen changes in the current of the river occur which diminish the deposit of alluvium upon the lands of lower riparian owners, the said railroad company is not liable in damages for such diminution of the quantity of alluvium deposited; such diminution of alluvium is damnum absque injuria.  *Answer*: This is refused, if by this point it is intended to deny that a recovery in damages may be had for an injury caused by the defendant company in the change of the location of its tracks. [8]

2. An upper riparian owner or occupier discharges his full duty to lower riparian owners when he delivers water upon their land in its natural channel without altering its quantity and quality.  *Answer :* This is true with this addition, that he delivers it upon the lands of the lower riparian owner in the same current that it formerly flowed there; that the upper riparian owner could not discharge the water which flowed through his land into the channel which it had been accustomed to flow, in such a manner as to divert the current from its ancient and natural course to the injury of the lower riparian owner. [9]

3. The embankment which is alleged to have changed the currents in the river and prevented the deposit of sand, if reasonable and necessary for the straightening of the tracks of the Pennsylvania railroad, and constructed without negligence but carefully, was and is a lawful structure, and if the plaintiffs were injured because sand was not deposited on their land by reason of the construction of said embankment, this was damnum absque injuria and the plaintiffs cannot recover.  *Answer :* This is refused if the embankment was the cause of the injury. [10]

4. The Juniata river is a public highway and the title to the bed of the stream below ordinary low watermark is in the commonwealth of Pennsylvania and no recovery can be had, if sand is no longer deposited on the bed of the river opposite the lands of the plaintiffs or on the banks thereof.  *Answer :* The Juniata river is a public highway and the title to the bed of the stream

below ordinary low watermark is in the commonwealth, and no recovery can be had if sand is no longer deposited on the bed of the river below low watermark; but if the defendant has caused it to no longer be deposited on their land between high and low watermark, then the plaintiffs may recover for the injury occasioned thereby. [11]

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* among others were (1–11) above instructions, quoting them.

*B. F. Junkin,* with him *L. E. Atkinson,* for appellant.—The deepening or obstruction of the waters of a stream, which is a "public highway" by the authority of an act of assembly, is not the subject of a claim for damages by the owner of the adjoining land for an injury done to, or the destruction of, a fording across the stream: Zimmerman v. Union Canal Co., 1 W. & S. 346.

It is clear that the sands which the plaintiffs claim to have lost were not accretions in the legal sense; these sands were not adherent to the shore or bank of the river, but lodged by their own gravity at the bottom of the river. They were neither alluvium nor accretions, but simply drift: Municipality No. 2 v. Orleans Cotton Press, 18 La. 122; People v. Lamblier, 5 Denio (N. Y.), 9; In re Wells Avenue, 4 N. Y. Supp. 301; Poor v. McClure, 77 Pa. 219; Allegheny City v. Reed, 24 Pa. 39; Allegheny City v. Nelson, 25 Pa. 332; Brandt v. McKeever, 18 Pa. 70.

It is only when an obstruction placed in a navigable stream by a superior riparian owner is such that its effect upon other riparian owners could be anticipated and foreseen that the party erecting it becomes liable : Bell v. McClintock, 9 Watts, 119; Lehigh Bridge Co. v. Lehigh Nav. Co., 4 Rawle, 9.

The injury complained of is too remote to warrant a recovery in damages: Penna. R. Co. v. Kerr, 62 Pa. 364; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; West Mahanoy Twp. v. Watson, 112 Pa. 574; Ewing v. P. C. & St. L. Ry. Co., 147 Pa. 44; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Haverly v. State Line, etc., R. R. Co., 135 Pa. 57; Thomas

v. Cent. R. R. Co., 194 Pa. 511; Behling v. Pipe Lines, 160 Pa. 366; S. S. Passenger Ry. Co. v. Trich, 117 Pa. 390.

It is mooted whether the chances of future accretions or alluvium constitute a part of the freehold and inherent in the property as a vested right: Taylor v. Underhill, 40 Cal. 471.

It is decided that section 8, article 16 of the constitution requires compensation to be made to property owners for such injuries only as would be actionable at common law, if done by a person not invested with the power of eminent domain : Edmundson v. P. M. & Y. R. R. Co., 111 Pa. 320 ; Penna. R. Co. v. Lippincott, 116 Pa. 472; Penna. R. Co. v. Marchant, 119 Pa. 541.

*William H. Sponsler*, with him *James M. Sharon*, for appellees.—The ownership of alluvium deposits by riparian owners of lands abutting upon all waters having sufficient action to deposit them, whether such waters are salt or fresh, navigable or unnavigable, whether affected by tide or not, is well established: Tiedeman on Real Property, sec. 685 ; Angell on Water Courses (7th ed.), sec. 53; Warren v. Chambers, 4 Am. Rep. 25; Lovingston v. County of St. Clair, 23 Wall. 46; Rex v. Yarborough, 1 Dow & Clark, 178; Gould on Waters, sec. 155.

Under the facts, the case of Wood v. Appal, 63 Pa. 210, is decisive of this question, and rules that the plaintiffs' lands ran to low water in the Juniata river: Klingensmith v. Ground, 5 Watts, 458; County of St. Clair v. Lovingston, 23 Wall. 46.

It is the law that the ownership of riparian lands upon navigable streams is absolute and unqualified as far as the line of ordinary high water, and from this point to the line of ordinary low water the ownership is so qualified or restricted, that the use or occupation shall not interfere or affect the public right of navigation or fishery or be an injury to other riparian owners: Hart v. Hill, 1 Wh. 123; Bird v. Smith, 8 Watts, 434; Coovert v. O'Conner, 8 Watts, 470; Johns v. Davidson, 16 Pa. 512; Dugan v. The Bridge Co., 27 Pa. 303; Flanagan v. City of Philadelphia, 42 Pa. 219; Tinicum Fishing Co. v. Carter, 61 Pa. 21; Wainwright v. McCullough, 63 Pa. 66; Poor v. McClure, 77 Pa. 214; Zug v. Com., 70 Pa. 138; Fulmer v. Williams, 122 Pa. 191; Com. v. Stevens, 178 Pa. 543; Morgan v. Scott, 26 Pa. 51.

The plaintiffs have a property in the habit of the river running in the course of nature to deposit these sands, and in their farm as a riparian property to receive these deposits: Lyon v. Fishmongers' Co., L. R. 1 App. Cas. 662; Concord R. R. Co. v. Greely, 23 N. H. 237; Kinzie v. Winston, 56 Ill. 56; Banks v. Ogden, 2 Wall. 57; Municipality No. 2 v. Orleans Cotton Press, 18 La. 122; County of St. Clair v. Lovingston, 23 Wall. 46.

The appellant is liable under right of eminent domain: Edmundson v. P. M. & Y. R. R. Co., 111 Pa. 316; Penna. R. Co. v. Duncan, 111 Pa. 352; Phila. & Reading R. R. Co. v. Patent, 17 W. N. C. 198; Northern Cent. Ry. Co. v. Holland, 117 Pa. 613; Levering v. Phila., Germantown, etc., R. R. Co., 18 W. N. C. 50; Delaware County's App., 119 Pa. 159.

The appellant is liable as a riparian owner: Lehigh Bridge Co. v. Lehigh Nav. Co., 4 Rawle, 9; Bell v. McClintock, 9 Watts, 119; Fulmer v. Williams, 122 Pa. 191.

As to the sand in situ and destroyed, the instructions of the court are found in the affirmation of the eleventh and twelfth points submitted by the plaintiff. These points were drawn upon the law as we understand it to be from the cases of Coleman's App., 62 Pa. 279, Ege v. Kille, 84 Pa. 340, Fulmer's App., 128 Pa. 84, and Lehigh Coal Co. v. Wilkesbarre, etc., R. R. Co., 187 Pa. 145.

The natural and logical deduction, founded upon many cases, is that the measure of damages for the destruction of the alluvium gathering habits of the farm would be the difference in the value of the farm before and after the injury: Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279.

OPINION BY MR. JUSTICE BROWN, January 7, 1901:

The plaintiffs are riparian owners along the Juniata river, in Perry county. Their land, consisting of a farm of about 100 acres, is located on the north bank of the river, which naturally approaches it in a sort of semicircle form. The flow of the water, as it comes down towards this land, is southeast, until it reaches the apex of the bend, where, before the wrong complained of, it was deflected to the northeast, and then passed eastward along plaintiffs' property. Before the construction of the embankment by the appellant on the south bank of the river, which caused the injury to appellees, as found by the

jury, there came, from immemorial time, with the flowing of the river and the swelling of its waters, deposits of valuable sand on plaintiffs' shore between high and low watermarks. As certainly as " seed time and harvest, and cold and heat " did " not cease, " these deposits never ceased in season, so long as the stream flowed as was its wont. Its dashing current, in times of high water, after having passed the lowest point of the bend at Trimmer's rock, became a gentle flow when it reached the shore of plaintiffs, from which the grains of sand settled and imperceptibly formed the alluvium at the bottom. In 1896 the Pennsylvania Railroad Company, in straightening its tracks at Trimmer's rock, built an embankment, which occupies not only the bank of the river, but extends out over and beyond low watermark. Since its completion, the waters of the river, in the recurring floods, no longer flow past plaintiffs' property in a gentle stream, but, encountering this artificial obstruction, are abruptly turned towards the north bank, and, instead of flowing, as from time out of mind before, along plaintiffs' shore, depositing the sand with which they had come freighted, they dash wildly on. The deposits have ceased, and with the current of the stream so changed, it is now insisted, as found by the jury, that they will never return. With the loss of this sand, the plaintiffs are deprived of a revenue from the sale of it, which was as regular as the return from their crops, and the question on this appeal is, whether the railroad company, having, by its obstruction of the natural flow of the river, deprived the owners of the farm of what they claim was its most valuable incident, must compensate them for the loss. In April, 1896, after the embankment had been built, there was the usual spring flood, and a large quantity of sand that had been deposited was swept away. The verdict of the jury in favor of the plaintiffs was not only for it, but for the loss of future deposits, their finding having been : " For sand bank carried away $1,382.50, for destruction of the habit of the farm to gather future sand, $1,117.50. "

The Juniata is a navigable river. From the original survey of April 28, 1765, down to the deed of March 9, 1829 to the father of appellees, who derive their title from him, every description of their farm gives the river, with its several courses, as a boundary; and their lands, therefore, run to its low water-

mark. This has been so long settled and is so generally known that it is hardly necessary to cite the following: " Ever since the case of Carson v. Blazer, 2 Binney, 475, decided in 1810, it has been held in many cases that a survey, returned as bounded by a large navigable river, vests in the owner the right of soil to ordinary low watermark of the stream, subject to the public right of passage for navigation, fishing, etc., in the stream, between ordinary high and ordinary low watermark. Variety, in the language of the return matters little, so that the intention to make the stream a boundary appears sufficiently in the description and diagram. In determining this both are taken together. The variety of expression in the decided cases is very great. . . . The result of the cases is, that when a return of survey calls for a stream as its boundary, or to run by, along, up or down it, the title will run to the stream, and the marking of trees on the bank or margin of the stream to identify the lines run to the river, as well as the return of courses and distances measured along the margin, necessarily to ascertain the quantity of land in the survey, will not restrain the title to the bank or margin only. As was said in Klingensmith v. Ground, supra, a corner tree is not always to be had where it is wanted, and then the next most convenient must be taken; or as in Ball v. Stark, supra, a surveyor cannot run a curved line with compass; but if a creek is returned as the line there can be no mistake as to it, and the courses and distances along it are to be disregarded: " Wood v. Appal, 63 Pa. 210. " Where a running stream is called for, it is always understood that the ownership extends to low watermark, and so far has this been held in Pennsylvania, that a traverse line has been held, technically to pursue the meanders, so as to include the points that would otherwise be thrown out by it. Though the words ' near the creek, ' strictly speaking, imply the existence of space betwixt the object immediately expressed, and the object of reference beyond it, they indicate, in popular meaning, no more than the whereabout. Such is the general rule, and what is there to take the case out of it? If the words ' thence up the creek north,' do not call for the creek as a boundary, why was the creek mentioned at all?" Klingensmith v. Ground, 5 W. 458. " In Pennsylvania, wherever a stream is navigable, and it is made the boundary of a grant by the state, the title passes to

low watermark, but no farther: " Johns v. Davidson, 16 Pa. 512.

Though the title of a riparian owner to the soil extends to low watermark, it is absolute only to high, and qualified as to what intervenes. Between high and low water he can use the land for his own private purposes, provided that, in such use of it, he does not interfere with the public rights of navigation, fishery and improvement of the stream. " This being the navigable character of the stream, [Allegheny] the rights of the riparian owners are settled by numerous decisions, a few of which may be referred to: Carson v. Blazer, supra; Shrunk v. Schuylkill Nav. Co., supra; Ball v. Slack, 2 Wh. 508 ; Zimmerman v. Union Canal Co., 1 W. & S. 346; Bailey v. Miltenberger, 7 Casey, 37; McKeen v. Delaware Div. Canal Co., 13 Wr. 424; Tinicum Fishing Co. v. Carter, 11 P. F. Smith, 21, opinion by SHARSWOOD, J., decided last winter at Philadelphia. From these and other cases, it will appear that the absolute title of the riparian proprietor extends to high watermark only, and that between ordinary high and ordinary low watermark, his title to the soil is qualified, it being subject to the public rights of navigation over it, and of improvement of the stream as a highway. He cannot occupy to the prejudice of navigation or cause obstructions to be placed upon the shore between these lines, without express authority of the state: " Wainwright v. McCullough, 63 Pa. 66. " As between themselves, riparian owners are owners of the soil, and are bound to observe the obligations that grow out of their ownership and their proximity." In Zug v. The Commonwealth, 70 Pa. 138, it was held that " an owner of the soil might use the river bed between high and low watermarks for his own private purposes, if he did not interfere with the rights of the public: " Fulmer v. Williams, 122 Pa. 191. In the foregoing is found the clearly defined right of the appellees in the river bed between the high and low watermarks. We are next led to the consideration of what the right was in the sand deposited there, which was swept away by the act of the defendant in changing the current of the stream.

Alluvion has been defined to be those accumulations of sand, earth and loose stones or gravel brought down by rivers, which when spread out to any extent, form what is called alluvial

land. It is the addition made to land by the washing of the seas or rivers; and its characteristic is its imperceptible increase, so that it cannot be perceived how much is added in each moment of time: Angell on Watercourses (7th ed.), sec. 53. This is practically the definition of the sand, or alluvium, deposited on the plaintiffs' shore, and the right to it can be no less than that to alluvion, which is ownership in the owner of the land increased: Gould on Waters, sec. 155; Lovingston v. St. Clair County, 23 Wall. 46; Kinzie v. Winston, 56 Ill. 56. That these deposits had not been allowed to accumulate and become a visible portion of the land of the appellees abutting on the river, but had been a valuable sediment on the shore between high and low watermarks, cannot affect the rule that the accretions belong to the owner of the land. The owners here owned it to low watermark, the only qualification upon their right to the use of it between high and low water, being that no public right of navigation, fishery or improvement should be interfered with. In removing the sand no such public right was affected, and the appellees took simply what belonged to them, as rightfully as the crops from their fields, the only difference being that, in the one case they harvested after sowing, whilst, in the other, nature without their aid, brought them increase. This right to the sand was not only to it in situ, but, with the clearly defined ownership of the appellees between high and low watermarks, extended, as the learned trial judge properly held in his charge to the jury, to future deposits. "The riparian right to future alluvion is a vested right. It is an inherent and essential attribute of the original property. The title to the increment rests in the law of nature. It is the same with that of the owner of a tree to its fruits, and of the owner of flocks and herds to their natural increase. The right is a natural, not a civil one. The maxim 'qui sentit onus debet sentire commodum' lies at its foundation. The owner takes the chances of injury and of benefit arising from the situation of the property. If there be a gradual loss, he must bear it; if a gradual gain, it is his. The principle applies alike to streams that do, and to those that do not overflow their banks, and where dikes and other defenses are, and where they are not, necessary to keep the water within its proper limits:" Lovingston v. St.

Clair County, 23 Wall. 46. Nothing need be added to these words of Mr. Justice SWAYNE.

The loss of the sand washed away and of the right to future alluvium having been caused by the defendant, it must compensate the appellees in damages. This liability cannot be evaded, whether the loss resulted from the appellant's exercise of the right of eminent domain, or from its act as a riparian owner. The construction of the embankment by the railroad company was for the improvement of its own highway and not of the Juniata river; and, if it was constructed under the right of eminent domain, liability to the party injured follows such exercise, to be enforced in trespass: Northern Cent. Ry. Co. v. Holland, 117 Pa. 613; County of Chester v. Brower, 117 Pa. 647; Delaware County's Appeal, 119 Pa. 159. If it acted simply as a riparian owner, it was bound by the rule, "sic utere tuo ut alienum non lædas," disregard of which generally means, not only injury to another, but liability for the wrong committed. "If a riparian owner places a structure upon his own land between high and low watermarks that impedes navigation, he infringes the public right, and subjects himself to liability therefor. His ownership of the land over which the water flows along the shore will not relieve him from the consequences of his act, for his title to the shore is subject to the right of the public in the stream. If he places the structure in such manner as to throw the current against his neighbor's shore at such an angle as to wear it away and undermine and wash out his land, he inflicts a private injury upon his neighbor for which a right to compensation exists. In the case of a private stream, no one would doubt the right of an injured owner to maintain an action for the damages suffered by him by reason of a change in the current. But one has no more right to injure another with the water of a navigable stream than with that of a nonnavigable, private stream. It is not the character of the stream, but the character and consequences of the act of the owner of the shore that determines the right of the injured party to compensation. As between themselves, riparian owners are owners of the soil, and are bound to observe the obligations that grow out of their ownership and their proximity. In Zug v. The Commonwealth, 70 Pa. 138, it was held that an owner of the soil might use the

river bed between high and low watermarks for his own private purposes, if he did not interfere with the rights of the public. This declaration is, however, to be understood as qualified by the rule we have just considered, that he must not, in the exercise of his right as a riparian owner, inflict injury upon his neighbors. This rule sets limits to the manner in which property of every description may be used, and is unaffected by the accident of location:" Fulmer v. Williams, 122 Pa. 191.

The damage done to the land of appellees is permanent. Their sand has been washed away and its value destroyed. The river no longer brings, nor will bring, alluvium to the shore, and the farm has lost its most valuable incident. The instruction of the court as to the measure of damages was correct. It is true that, as to future alluvium, the finding of the jury was conjectural. It could not have been otherwise. But the plaintiffs' claim for it was substantial, and the verdict, which cannot be said to be unreasonable, is their compensation for it.

The assignments of error are all overruled and the judgment is affirmed.